UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| RONALD HUGHES, JR. | : | |
| Debtor | : | Bankruptcy No. 05-15209F |
| _____ | | |
| RONALD HUGHES, JR. | : | |
| Plaintiff | : | |
| v. | : | |
| WELLS FARGO BANK MINNESOTA, N.A., COUNTRYWIDE HOME LOANS, INC. and DELTA FUNDING CORP. | : | |
| Defendants | : | Adversary No. 05-0395 |
| _____ | | |

..................................................

MEMORANDUM

..................................................

All three defendants in this adversary proceeding have filed a joint motion for summary judgment seeking to dismiss all claims alleged against them by the debtor/plaintiff.  Plaintiff Ronald Hughes, Jr. has alleged violations of the federal Truth in Lending Act, 15 U.S.C. §§ 1601, et seq., and Pennsylvania's Unfair Trade Practices and Consumer Protection Law in connection with a loan transaction entered into between the debtor and his wife, Theresa Hughes, and defendant Delta Funding Corp. in August 2000.  Wells Fargo Bank Minnesota, N.A. is the current holder of the mortgage arising from that loan, while Countrywide Home Loans, Inc. is the current servicer of the mortgage loan.

The defendants request the entry of summary judgment asserting that identical claims were litigated by the plaintiff in two prior lawsuits: first, in a district court action against Delta and Countrywide that was determined by an arbitrator against Mr. and Mrs. Hughes and then confirmed by the district court; second, in a foreclosure action brought by Wells Fargo in the Pennsylvania Court of Common Pleas for Delaware County, in which summary judgment was entered against Mr. and Mrs. Hughes on three counterclaims they had raised in that litigation. Based upon the results of those two prior lawsuits, the defendants in this adversary proceeding now contend that the plaintiff's claims are barred by res judicata and collateral estoppel; moreover, they contend that this bankruptcy court is without jurisdiction to determine the claims against Wells Fargo due to application of the <u>Rooker-Feldman</u> doctrine.

The plaintiff, who has been represented in this proceeding and in the two prior lawsuits by the same attorney, argues in response that neither <u>Rooker-Feldman</u> nor the two preclusion principles are implicated by this adversary proceeding. He maintains that the merits of his claims have never been adjudicated and that he is entitled to have them adjudicated in this bankruptcy forum.

For the reasons that follow, I conclude that the defendants' demand for the entry of summary judgment is warranted.

I.

Summary judgment should be granted only if a court concludes that "there is no genuine issue as to any material fact and that the moving party is entitled to

2

judgment as a matter of law."  Fed. R. Civ. P. 56(c) (incorporated in bankruptcy proceedings by Fed. R. Bankr. P. 7056).  The moving party bears the burden of proving that no genuine issue of material fact is in dispute.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n. 10 (1986).

"[The court must] view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion."  Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995); see also Helen L. v. DiDario, 46 F.3d 325, 329 (3d Cir. 1995); Valhal Corp. v. Sullivan Associates, Inc., 44 F.3d 195, 200 (3d Cir. 1995); Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976).

As explained by the Third Circuit:

> At the summary judgment stage of proceedings, if the movant – in this case the Defendants – can point to the absence of any factual support for one of [the] essential elements [of the complaint], then the non-movant, bearing the burden of persuasion at trial, must introduce specific facts showing a need for trial, pursuant to Fed. R. Civ. P. 56(e).  See Celotex, 477 U.S. [317,] 322-24, 106 S. Ct. 2548 [1986].  If the non-moving party fails to go beyond conclusory allegations in its pleadings and to produce specific facts indicating that there is a genuine issue for trial, summary judgment will be granted in favor of the moving party.

Annulli v. Panikkar, 200 F.3d 189, 198-99 (3d Cir. 1999) (citations omitted).

In this proceeding, the defendants have attached to their memorandum in support of their joint motion various pleadings and court orders from the two prior lawsuits involving these parties.  The plaintiff has attached a copy of the docket entries in the state foreclosure action.  As there is no dispute by the plaintiff as to the authenticity of those documents, the only issue remaining is whether the defendants are entitled to relief as a matter of law.

3

Before addressing the legal issues, I shall summarize the prior litigation, beginning with the earlier district court litigation.

A.

In 2001, Ronald and Teresa Hughes brought suit in the District Court for the Eastern District of Pennsylvania, docketed at 01CV3799.  They named as defendants Countrywide Home Loans, Inc., Delta Funding Corp. and Universal Capital Services, Inc. See Defendants' Ex. A.  Mr. and Mrs. Hughes alleged that they had applied to Delta for a $20,000 refinancing loan to pay off delinquent taxes and obtain funds to make home improvements.  See id. ¶ 6.  Despite assurances from Delta that their loan request was approved, id., ¶ 7, and although obtaining a loan from Delta in August 2000, the plaintiffs averred that they did not receive the loan proceeds that they had requested, and that the loan disclosures made to them were improper.  See id., ¶¶ 12, 14.

In Count I of their district court complaint, the plaintiffs sought statutory damages and attorney's fees from Countrywide and Delta for violations of the federal Truth in Lending Act ("TILA"), pursuant to 15 U.S.C. § 1640(a).  Id.  In Count II of this complaint, brought against Countrywide, the Hugheses sought to rescind the loan transaction under TILA, pursuant to 15 U.S.C. § 1635.  Id.  In Count III, raised against Countrywide and Universal only, the Hugheses alleged that the loan transaction violated the Pennsylvania Credit Services Act, and sought statutory and punitive damages, plus attorney's fees under 73 P.S. § 2191.  Id.  Finally, the plaintiffs asserted a claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law (the "UTPCPL"), 73

4

P.S. §§ 201-1, et seq.,  against all three defendants for actual damages and attorney's fees.
Id.

The loan agreement probably had a mandatory arbitration provision among

its terms, a provision that the district court found enforceable.  The civil action was

therefore assigned to an arbitrator.  In  the plaintiffs' "opening brief,"  Defendants' Ex. B,

there is a reference made to a settlement with defendant Universal Capital Services, Inc.

Id. at 1.  Countrywide is also referred to in this brief as the mortgagee.  Id. at 1.  The

Hugheses argued their entitlement to relief under TILA and the UTPCPL against Delta

and Countrywide.

The defendants filed their own responsive memorandum, Defendants' Ex.

C, wherein they contended that the evidence presented at the arbitration hearing

demonstrated that there were no violations of the federal loan disclosure statute, and no

violations of Pennsylvania's consumer protection statutes.  Id.  Thus, Delta and

Countrywide maintained that Mr. and Mrs. Hughes were not entitled to damages nor loan

rescission.  Moreover, Countrywide explained that it was not a mortgagee but a loan

servicer, with Wells Fargo Minnesota, N.A., (as trustee for Delta Funding Home Equity

Loan Trust 2000-3) as the mortgagee.  Id. at 22.  Therefore, even if there had been a right

of rescission under section 1635 of TILA, the defendants argued that no such relief could

be awarded in litigation not involving the mortgagee.  Id. at 22-23.

The plaintiffs filed a reply memorandum in this arbitration proceeding that

reiterated their entitlement to damages under federal and state law (indeed, contending

that their original damages request had been understated) and argued, inter alia, that

Countrywide was estopped from asserting that it was not the mortgagee. <u>See</u> Defendants'

Ex. D.

On April 10, 2003, the arbitrator issued an award that stated: "The claim of

the claimants is dismissed" and "No award is made against the Respondents." <u>See</u>

Defendants' Ex. E. The award also provided: "This Award is in full settlement of all

claims and counterclaims submitted to this Arbitration. All claims not expressly granted

herein are hereby, denied." <u>Id.</u> On December 2, 2003, upon motion of the defendants to

confirm the arbitration award, and upon consideration of the plaintiffs' response thereto,

the district court issued an order entering judgment in favor of defendants Delta and

Countrywide. <u>See</u> Defendants' Ex. F.


B.


In 2003, probably prior to the entry of judgment against Mr. and Mrs.

Hughes in district court, Wells Fargo Bank Minnesota, N.A., commenced a foreclosure

action against Mr. and Mrs. Hughes in the Pennsylvania Court of Common Pleas of

Delaware County, docketed at No. 03-10631. <u>See</u> Defendants' Ex. G. This yielded an

answer with "new matter and counterclaims." <u>Id.</u>

Mr. and Mrs. Hughes contended in their answer that they had validly

rescinded the mortgage loan entered into in August 2000 and thus it could not be

foreclosed upon. <u>Id.</u> at 1. In the "New Matter" section of their answer, the borrowers

restated the facts alleged in the earlier district court complaint. <u>Id.</u> Furthermore, they

pled three counterclaims seeking: damages under 15 U.S.C. § 1640 for violations of

6

TILA; rescission under 15 U.S.C. § 1635; and damages under the UTPCPL.  Id. at 4-7.[1]

Attached to their answer were copies of the same loan disclosure statement and settlement

sheet that had been used in the 2001 district court litigation (indeed, the loan disclosure

form even had stamped on its top, "American Arbitration").

Wells Fargo then moved for summary judgment on the new matter and

counterclaims raised by Mr. and Mrs. Hughes.  See Defendants' Ex. H.  In its motion for

summary judgment, Wells Fargo contended that the district court judgment in favor of

Delta and Countrywide precluded consideration of the new matter and counterclaims as

the issues raised were identical.  Id.  Whereupon on March 21, 2005, the state court issued

an order that dismissed the counterclaims against Wells Fargo with prejudice.  See

Defendants' Ex. J.

The plaintiff in this adversary proceeding attached to his response a copy of

the state court docket entries in the foreclosure action.  See Plaintiff's Ex. A.  They reflect

that Wells Fargo had filed "preliminary objections" to his counterclaims.  Mr. Hughes

represents, but the docket entries do not so state, that the preliminary objections were

denied.[2]  The existence of an order is referred to on the docket, but its holding is not

mentioned, and the plaintiff did not attach a copy of the order to his response.  In

addition, the plaintiff argues, but does not provide any verified statement to this effect,

---

[1]They did not assert as a counterclaim former Count III of the district court action
based upon the state law Credit Servicing Act.

[2]Unverified statements of a party contained in a legal memorandum should not be
considered in response to a summary judgment motion.  See California Union Insurance Co. v.
City of Walnut Grove, 857 F. Supp. 515, 519 (S.D. Miss. 1994) ("To defend against a proper
summary judgment motion, one may not rely on mere denial of material facts nor on unsworn
allegations in the pleadings or arguments and assertions in briefs or legal memoranda."); US
Sprint Communications Co., L.P. v. Thompson, 1992 WL 350233, at *2 (D. Kan. 1992).

that Wells Fargo's motion for summary judgment in state court was not properly served upon him and was entered without opposition. The summary judgment order does not state that it was entered by default. See Defendants' Ex. J.

According to the plaintiff (but again not reflected on the docket) the state court then set a date to determine his liability on the foreclosure claim, but that action was stayed when Mr. Hughes filed a chapter 13 bankruptcy case on April 14, 2005. (The docket does reflect that a suggestion of bankruptcy was filed on April 19, 2005). On May 19, 2005, Wells Fargo filed a proof of claim in the underlying bankruptcy case asserting a $65,904.23 secured claim, including $39,469.24 in arrears. On June 1, 2005, the plaintiff filed the instant adversary complaint against Wells Fargo, Countrywide Homes and Delta Funding.

In the complaint at bench, Mr. Hughes repeats nearly verbatim the allegations of the prior district court complaint and common pleas new matter and counterclaims.[3] In Count I of this adversary proceeding, he demands damages under 15 U.S.C. § 1640 for TILA violations allegedly stemming from the August 2000 loan with Delta. In Count II he seeks rescission of the mortgage loan under section 1635 of TILA, plus damages and attorney's fees. In Count III, he demands damages for violations of the UTPCPL.

---

[3]The only difference between the first claim here and the district court action's first claim is that the debtor added a citation to section 1639(a) and (b) for the HOEPA pre-settlement disclosure violation (as it had also been added to the corresponding state court counterclaim). The second claim in this proceeding is also identical to the second claim in the district court complaint, except for the specific request of "additional statutory damages of not less than $12,737.06." (Again, this addition had also appeared in the corresponding common pleas counterclaim.) The third claim is identical to Count IV of the district court action, even to the point of repeating a typo (and, presumably accidentally, referring to the Hugheses as plaintiffs when their denomination in the common pleas action was defendants).

In other words, the instant adversary proceeding essentially repeats Counts I, II and IV of the district court action and all three counterclaims of the state court litigation.  Moreover, two of the named defendants in this proceeding were named defendants in the district court lawsuit and the third defendant was the counterclaim-defendant in the state court litigation.

II.

Federal res judicata, or claim preclusion, "applies to claims that 'were or could have been raised' in a prior action involving the 'parties or their privies' when the prior action had been resolved by 'a final judgment on the merits.'"  In re Graham, 973 F.2d 1089, 1093 (3d Cir. 1992) (quoting Allen v. McCurry, 449 U.S. 90, 94 (1980)); see also Lubrizol Corp. v. Exxon Corp., 929 F.2d 960, 963 (3d Cir. 1991) (" Federal law of claim preclusion requires a defendant to demonstrate that there has been (1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action.").  "Claim preclusion thus bars relitigation of any claim that could have been raised in the prior action even if it was not so raised."  In re Graham, 973 F.2d at 1093.  Further, "[a]pplication of the principles of claim preclusion 'is not altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case.'"  Berwind Corp. v. Apfel, 94 F. Supp. 2d 597, 609 (E.D. Pa. 2000) (quoting Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981)).

9

Insofar as federal judgments are concerned, "[i]ssue preclusion applies when (1) the issue sought to be precluded (is) the same as that involved in the prior action; (2) that issue (was) actually litigated; (3) it (was) determined by a final and valid judgment; and (4) the determination (was) essential to the prior judgment." In re Graham, 973 F.2d at 1097 (citing In re Braen, 900 F.2d 621, 628-29 n. 5 (3d Cir. 1990) (and quoting In re Ross, 602 F.2d 604, 608 (3d Cir. 1979)). In addition, "the party against whom the doctrine is invoked [must have] had a full and fair opportunity to litigate the issue in the previous suit." Berwind Corp. v. Apfel, 94 F. Supp. 2d at 611.

I note that preclusion principles apply to district court judgments confirming arbitration awards. Harvey v. O'Quinn, 57 Fed. Appx. 754, 755 (9th Cir. 2003) ("Under the Federal Arbitration Act, a judgment that results from court confirmation of an arbitration award has 'the same force and effect' as any other final judgment on the merits. 9 U.S.C. § 13."); see Schattner v. Girard, Inc., 668 F.2d 1366, 1368 (D.C. Cir. 1981) ("A party whose claims have been decided in arbitration may not then bring the same claims under new labels."); Brody v. Hankin, 299 F. Supp. 2d 454, 459 (E.D. Pa. 2004) ("Thus, an arbitration award, unless and until invalidated, creates or authoritatively declares rights even as a judgment does and further litigation of a claim submitted to an arbitrator is precluded by the entry of an award thereon."), rev'd on other grounds, 2005 WL 2077180 (3d Cir. 2005); Bank of America Nat'l Trust and Savings Assoc. v. Hotel Rittenhouse Assocs., 1989 WL 52480, at *4 (E.D. Pa. 1989); see also In re Marks, 192 B.R. 379, 384 (E.D. Pa. 1996) (applying Pennsylvania preclusion principles to state court judgment confirming arbitration award).

In this adversary proceeding, the plaintiff is seeking monetary judgments against Delta and Countrywide based upon the identical claims raised against them in the prior district court lawsuit.   The loan transaction at issue was the same.  The factual allegations were similar.  The three causes of action and the relief sought against them were identical.  From the copies of memoranda submitted to the arbitrator and attached in this summary judgment motion, it is clear that all parties presented evidence in support of their respective positions.  And in that earlier lawsuit, final judgment was entered in favor of these defendants by the district court.

Thus, all of the elements of federal issue and claim preclusion as to defendants Delta and Countrywide are present in the pending adversary proceeding.  In re Desrosiers, 212 B.R. 716 (Bankr. D. Mass. 1997) (dismissal of TILA action in district court precluded later adversary proceeding in bankruptcy court); see, e.g., Kuderer v. Farmers Home Admin., 69 F.3d 544 (Table), 1995 WL 623759 (9th Cir. 1995); Smith v. Beal Acceptance Corp., 244 B.R. 487, 491 (N.D. Ga. 2000); see also Begala v. PNC Bank, 214 F.3d 776, 780 (6th Cir. 2000) ("The law does not allow Begala the luxury of returning to federal court with the same set of facts until he succeeds in alleging a federal cause of action.").

The plaintiff unpersuasively argues against this straightforward conclusion by suggesting that the arbitration award and later district court judgment against him were not based upon the merits, but were entered simply because Wells Fargo, the mortgage holder, had not been named as a party defendant.  However, neither the arbitration award nor the district judgment makes any reference to that issue; nor was there was any evidence that a motion to dismiss for failure to join an indispensable party was filed

11

(indeed, the plaintiff had argued estoppel on this point to the arbitrator), and so there is no basis to so limit the preclusive effect of this judgment.[4]  See In re Desrosiers (bankruptcy court has no grounds to conclude that dismissal by the district court for lack of prosecution was without prejudice when the order did not so state).

In addition, the plaintiff's claims in the district court against Countrywide and Delta for statutory damages under federal and state law concerning the loan disclosures and representations made in August 2000—which claims are repeated in this proceeding—did not require the joinder of the current mortgage holder.  See McCain v. Clearview Dodge Sales, Inc., 574 F.2d 848, 850 (5th Cir. 1978); Spearman v. Tom Wood Pontiac-GMC, Inc., 2000 WL 33125463, at *5 (S.D. Ind. 2000).

Accordingly, Delta and Countrywide are entitled to summary judgment on their affirmative defense of issue and claim preclusion arising from the earlier district court judgment entered in their favor and against the plaintiff.


III.


Wells Fargo, who took an assignment of its mortgage, probably from Delta, see Defendants' Ex. G (answer, ¶ 3), Ex. H (at 9), was not a party to the district court litigation.  Nonetheless, this defendant contends that principles of privity and affirmative collateral estoppel preclude the plaintiff from obtaining relief against it.  Furthermore,

---

[4]In some instances, res judicata may apply to later litigation even when dismissal of the earlier lawsuit was based solely upon the plaintiff's failure to join an indispensable party. See generally United States ex rel. Hall v. Indian Country Leasing Co., 41 F.3d 1511 (Table), 1994 WL 548959 (7th Cir. 1994).

Wells Fargo argues that the state court order dismissing the plaintiff's three counterclaims raised in its foreclosure lawsuit is res judicata and entitled to full faith and credit in this federal court.  Finally, Wells Fargo contends that the state court order deprives this court of jurisdiction over the claims against it in light of the Rooker-Feldman doctrine.

I shall first analyze the Rooker-Feldman effect, if any, of the state court order dismissing plaintiff's three counterclaims upon this proceeding.  Thereafter, I shall also consider Wells Fargo's preclusion arguments.

A.

The so-called Rooker-Feldman doctrine provides that federal courts, other than the United States Supreme Court, lack subject matter jurisdiction to review judgments rendered by state courts.  See Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983); see also 28 U.S.C. § 1257 (conferring certiorari power to the Supreme Court).[5]  Thus, the doctrine "'prohibits District Courts [as well as bankruptcy courts] from adjudicating

--------

[5] 28 U.S.C. § 1257(a) provides:

Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari where the validity of a treaty or statute of the United States is drawn in question or where the validity of a statute of any State is drawn in question on the ground of its being repugnant to the Constitution, treaties, or laws of the United States, or where any title, right, privilege, or immunity is specially set up or claimed under the Constitution or the treaties or statutes of, or any commission held or authority exercised under, the United States.

13

actions in which the relief requested requires determining whether the state court's decision is wrong or voiding the state court's ruling.'" In re Knapper, 407 F.3d 573, 580 (3d Cir. 2005) (quoting Walker v. Horn, 385 F.3d 321, 329 (3d Cir. 2004)).  As was explained by the Third Circuit Court of Appeals:

> The bankruptcy court is also prohibited from reviewing the state court's judgment by the Rooker-Feldman doctrine, which prohibits lower federal courts from sitting as effective courts of appeal for state court judgments.  See, e.g., D.C. Court of Appeals v. Feldman, 460 U.S. 462, 476 . . . (1983) (citing Rooker v. Fidelity Trust Co., 263 U.S. 413 . . . (1923)); Besing v. Hawthorne (In re Besing), 981 F.2d 1488, 1496 (5th Cir. 1993) ("The Bankruptcy Code was not intended to give litigants a second chance to challenge a state court judgment nor did it intend for the Bankruptcy Court to serve as an appellate court [for state court proceedings]") (quoting In re G & R Mfg. Co., 91 B.R. 991, 994 (Bankr. M.D. Fla. 1988)).

In re Wilson, 116 F.3d 87, 90 (3d Cir. 1997) (citations omitted).

> In Knapper, the Court of Appeals explained the scope of the doctrine:

> [A] claim is barred by Rooker-Feldman under two circumstances; first, if the federal claim was actually litigated in state court prior to the filing of the federal action or, second, if the federal claim is inextricably intertwined with the state adjudication, meaning that federal relief can only be predicated upon a conviction that the state court was wrong. In either case, Rooker-Feldman bars a litigant's federal claims and divests the District Court of subject matter jurisdiction over those claims.

Id., 407 F.3d 580.

Application of this doctrine is limited to federal litigation commenced after the relevant state court adjudication has been entered.  See, e.g., Federacion de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico, 410 F.3d 17, 24 (1st Cir. 2005).  Moreover,

14

> [t]he Rooker-Feldman doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. Rooker-Feldman does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions.

Exxon Mobil Corp. v. Saudi Basic Industries Corp., ___ U.S. ___,125 S. Ct. 1517, 1521-22 (2005).

Prior to its Knapper decision, the Third Circuit had explained that a federal claim is inextricably intertwined with a prior state court judgment whenever:

> (1) the federal court must determine that the state court judgment was erroneously entered in order to grant the requested relief, or (2) the federal court must take an action that would negate the state court's judgment.

Walker v. Horn, 385 F.3d at 330.

Thus, there are numerous reported decisions in which a federal court has rejected jurisdiction over a TILA rescission claim brought after the entry of a state court foreclosure judgment, on the basis that rescission of the mortgage was inextricably intertwined with a judgment granting foreclosure. See, e.g., Harper v. Chase Manhattan Bank, 138 Fed. Appx. 130, 133 (11th Cir. 2005); Crutchfield v. Countrywide Home Loans, 389 F.3d 1144, 1148 (10th Cir. 2004). Such a judgment, however, might not be inextricably intertwined with TILA damage claims. See Rohr v. Home Loans Corp., 2005 WL 2027684, at *3 (D. Colo. 2005).

In this dispute, the state court has not entered any judgment in foreclosure. However, it has entered an order prior to the commencement of this adversary

15

proceeding, which order dismissed the identical claims now raised by the plaintiff against

Wells Fargo.  In other words, the validity of the three claims asserted by the plaintiff in

this proceeding were actually litigated in the state court, with a ruling adverse to the

plaintiff before the present lawsuit began.  See ITT Corp. v. Intelnet International Corp.,

366 F.3d 205 (3d Cir. 2004):

> In Desi's Pizza [Desi's Pizza, Inc. v. City of Wilkes-Barre, 321
> F.3d 411 (3d Cir. 2003)], we noted the factors for determining
> whether an issue was "actually litigated" by the state courts: a
> plaintiff must present its federal claims to the state court, and
> the state court must decide those claims. . . .  Ordinarily, it
> will be more difficult to demonstrate that a claim was
> "actually litigated" than to show that the federal claim is
> "inextricably intertwined" with the state court judgment. The
> former requires that the state court has considered and
> decided precisely the same claim that the plaintiff has
> presented in the federal court.  Conversely, two claims may
> proceed on different theories or involve different parties and
> yet be inextricably intertwined if the District Court's judgment
> would "prevent a state court from enforcing its orders." . . .
>
> The actually litigated prong is principally useful where the
> claims before the state and federal courts are in all respects
> identical. In such cases, the straightforward application of the
> "actually litigated" test avoids the more complicated
> "inextricably intertwined" inquiry.

Id. at 211 n. 8 (citations omitted).

As just mentioned, the Rooker-Feldman doctrine as applied in this circuit

precludes a federal court's consideration of claims actually litigated and determined by

the state court prior to the commencement of the federal court lawsuit.  See, e.g., In re

Knapper, 407 F.3d at 580; Marran v. Marran, 376 F.3d 143, 150 (3d Cir. 2004); see also

Kropelnicki v. Siegel, 290 F.3d 118, 128 (2d Cir. 2002).[6]  Thus, I am without jurisdiction

to determine the state court was in error to dismiss the counterclaims brought by Mr. and

Mrs. Hughes, as the plaintiff in essence requests in this proceeding.[7]

One final issue deserves mention.  As will be discussed below, the state

court order dismissing plaintiff's counterclaims is not a "final order" within the meaning

of Pennsylvania law.  See Pa. R. App. P. 341(a).  Nonetheless, the interlocutory nature of

the order would not prevent the application of the Rooker-Feldman doctrine.  Rooker-

Feldman applies to interlocutory orders as well as final orders.  See, e.g., Federacion de

Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico, 410 F.3d 17;

Port Authority Police Benevolent Association v. Port Authority Police Department, 973

F.2d 169, 177-78 (3d Cir. 1992); In re 421 Willow Corp., 2003 WL 22318022, at *6 n. 6

(E.D. Pa. 2003).  As one court explained:

---

[6]The Third Circuit Court of Appeals acknowledged that it was the only circuit
court to have included "a formal 'actually litigated'" alternative under the Rooker-Feldman
doctrine.  ITT Corp. v. Intelnet International Corp., 366 F.3d at 211 n.9.  Nonetheless, I am
bound to follow the legal analysis of the Third Circuit until that court or the Supreme Court holds
otherwise.  See, e.g., In re Jones, 183 B.R. 93, 96 (Bankr. W.D. Pa.1995) ("As a subordinate
court, we are bound by the interpretation of the law provided by the Third Circuit, unless that
interpretation has been overruled by the United States Supreme Court or by the Third Circuit
sitting en banc.").   The Supreme Court's recent decision, Exxon Mobil Corp.  v. Saudi Basic
Industries Corp., 125 S. Ct. 1517 (2005), does not appear to overrule this aspect of the Third
Circuit's Rooker-Feldman analysis, in that the Court appears to allow federal courts to obtain
jurisdiction over claims "independent" from those previously litigated.  Id. at 1527.  Indeed, the
Third Circuit has continued to identify the "actually litigated" component as part of its Rooker-
Feldman doctrine in decisions issued after Exxon.  See In re Knapper, 407 F.3d at 580.

[7]The plaintiff complains that the dismissal of his counterclaims by the state court
violated Pennsylvania's "Coordinate Jurisdiction Rule" in that it conflicted with an earlier
decision to deny Wells Fargo's preliminary objections.  Whether that argument has any
persuasive appeal, but see Ryan v. Berman, D.O., 813 A.2d 792, 794 (Pa. 2002); Riccio v.
American Republic Insurance Co., 705 A.2d 422, 425 (Pa. 1997); Goldey v. Trustees of
University of Pennsylvania, 675 A.2d 264, 267 (Pa. 1996), can only be considered by
Pennsylvania courts.

> It cannot be the meaning of Rooker-Feldman that, while the
> inferior federal courts are barred from reviewing final
> decisions of state courts, they are free to review interlocutory
> orders.

Campbell v. Greisberger, 80 F.3d 703, 707 (2d Cir. 1996).  Indeed, "Rooker-Feldman is

broader than claim and issue preclusion because it does not depend on a final judgment

on the merits."  Charchenko v. City of Stillwater, 47 F.3d 981, 983 n. 1 (8th Cir. 1995).

Therefore, for these reasons, the Rooker-Feldman doctrine bars this federal

court from considering plaintiff's three claims raised against Wells Fargo in this

adversary proceeding, as those claims were dismissed by the state court prior to the

commencement of this lawsuit.

B.

Although I have just concluded that the claims asserted against Wells Fargo

must be dismissed for lack of subject matter jurisdiction, for purposes of completeness I

shall also consider the defendant's two preclusion defenses.  See Ayres-Fountain v.

Eastern Savings Bank, 2005 WL 2813857 (3d Cir. 2005) (concluding that plaintiff's

claims were barred both by Rooker-Feldman and by res judicata).  While federal common

law has developed its own set of preclusion principles, if the decision allegedly

precluding a later action was issued by a state court, then the federal courts must apply the

preclusion principles developed by that state.  Gregory v. Chehi, 843 F.2d 111, 116 (3d

Cir. 1988); see Richard Johnson Honey Shoe Shine Express Services v. U.S. Equity

Realty, Inc., 125 F. Supp. 2d 695, 699 (E.D. Pa. 2000) (same); In re Marks, 192 B.R. at

383 (same).  This derives from the Full Faith and Credit statute, 28 U.S.C. § 1738,

requiring a court to give the same effect to a judgment that the issuing state would.

Gregory v. Chehi, 843 F.2d at 116 (citing Davis v. United States Steel Supply, 688 F.2d

166, 170 (3d Cir. 1982)); In re Marks, 192 B.R. at 384.

   In some jurisdictions, a state court order of foreclosure may preclude the

defendant/mortgagor from later asserting against a mortgagee a complaint in federal court

raising Truth in Lending violations, be the mortgagor seeking statutory damages or

rescission.  See, e.g., Albano v. Norwest Financial Hawaii, Inc., 244 F.3d 1061 (9th Cir.

2001); Thomas v. General Electric Credit Corp., 780 F.2d 1123 (4th Cir. 1986).  Whether

Pennsylvania law would bar such a second state court suit after a foreclosure judgment is

debatable, see In re Jones, 122 B.R. 246, 250 (W.D. Pa. 1990), but that issue need not be

considered.  The judgment issued by the state court dismissed the plaintiff's

counterclaims; it did not enter any judgment in foreclosure.  Accordingly, the relevant

query is whether Pennsylvania law would render the dismissal order preclusive in a

second state court lawsuit.  If so, then a similar result would apply in this federal court.

   Pennsylvania courts hold that issue preclusion (or collateral estoppel)

prevents relitigation of issues previously determined in a court of competent jurisdiction,

see Muse v. Cermak, 428 Pa. Super. 199, 203 (1993), and applies in the following

circumstances:

> For similar reasons, the present action is not barred by
> principles of collateral estoppel.  This principle, which is
> sometimes referred to as issue preclusion, prevents an issue of
> law or fact from being relitigated after it has been once
> litigated and finally adjudicated in a court of competent
> jurisdiction . . . .  The doctrine applies when (1) an issue is
> identical to one which was presented in a prior case; (2) there
> has been a final judgment on the merits of the issue in the
> prior case; (3) the party against whom collateral estoppel is
> asserted was a party in, or in privity with a party in, the prior

> action; (4) the party against whom the doctrine is asserted, or
> one in privity with the party, had a full and fair opportunity to
> litigate the issue in the prior proceeding; and (5) the
> determination in the prior proceeding was essential to the
> judgment . . . .  Collateral estoppel applies only to issues
> which have been actually litigated in a prior action.

Hopewell Estates, Inc. v. Kent, 435 Pa. Super. 471, 478 (1994) (citations omitted).

In Pennsylvania "res judicata, also known as claim preclusion, provides that where there is a final judgment on the merits, future litigation between the parties on the same cause of action is prohibited." McGill v. Southwark Realty Co., 828 A.2d 430, 435 (Pa. Cmwlth. 2003).  State courts define the elements of claim preclusion in these terms:

> Invocation of the doctrine of res judicata (claim preclusion)
> requires that both the former and latter suits possess the
> following common elements:
>
> 1. identity in the thing sued upon;
> 2. identity in the cause of action;
> 3. identity of persons and parties to the action;
> and
> 4. identity of the capacity of the parties suing or
> being sued.

Gatling v. Eaton Corp., 2002 Pa. Super. 276, 807 A.2d 283, 287 ( 2002); see also Wexler v. Citibank, 1994 WL 580191, at *5 (E.D. Pa. 1994).

In contrast with issue preclusion, claim preclusion does not require actual litigation of the merits of the claim.[8]  However, in Pennsylvania, the invocation of either

---

[8]Thus, claim preclusion applies even to default judgments.  See, e.g., Fox v. Gabler, 534 Pa. 185, 189 (1993); Zimmer v. Zimmer, 457 Pa. 488, 490-91 (1974).  In Pennsylvania, unlike the federal system, a party may obtain summary judgment solely due to a lack of response.  See Harber Philadelphia Center City Office Limited v. LPCI L.P., 764 A.2d 1100, 1104-05 (Pa. Super. 2000).  Thus, if the plaintiff had properly verified his argument that the state court order dismissing his counterclaims was entered solely because no response was filed, then collateral estoppel might not apply.  But such an order could be entitled to res judicata application.

res judicata or collateral estoppel requires the entry of a final order in the prior lawsuit.

See, e.g., Creighan v. City of Pittsburgh, 389 Pa. 569, 574 (1957) (res judicata); Groller v.

W.C.A.B. (Alstrom Energy Systems), 873 A.2d 787 (Pa. Cmwlth. 2005) (same); PMA

Ins. Group v. W.C.A.B. (Kelley), 665 A.2d 538, 541 (Pa. Cmwlth. 1995) ("A prerequisite

to the application of collateral estoppel is that the prior decision asserted to have a

preclusive effect must be a final judgment."); DAP Financial Management Co. v. Ciotti,

2000 WL 33711071, at *2 (Pa. Com. Pl. 2000) ("For res judicata or collateral estoppel to

apply, the order relied upon must have been a final judgment on the merits. . . .

Nonappealable interlocutory orders are not final and, therefore, have no res judicata or

collateral estoppel effect.").

      In this proceeding, Wells Fargo offered evidence that summary judgment

was granted only in the context of dismissing plaintiff's counterclaims against it.  No

determination has been made of its claims against Mr. Hughes.  Those claims are pending

and have been stayed by the plaintiff's bankruptcy filing.

      Pennsylvania's Appellate Rule 341(b) defines a final order as one that "(1)

disposes of all claims and of all parties; or (2) any order that is expressly defined as a

final order by statute; or (3) any order entered as a final order pursuant to subdivision (c)

of this rule."  Pa. R. App. P. 341(b) (West 2005).  Thus, an order granting summary

judgment as to liability is interlocutory.  See Navarro v. Ohio Casualty Insurance Co., 295

Pa. Super. 151 (1982).  Moreover, "absent an express determination of finality under Rule

341(c), the dismissal of a complaint with the concomitant dismissal of only one count of a

multi-count counterclaim is interlocutory and unappealable."  Moore Motors, Inc. v.

Beaudry, 775 A.2d 869, 870 (Pa. Super. 2001).

At the conclusion of Rule of Appellate Procedure 341 is a "Note," referred to by the Pennsylvania Superior Court in Keefer v. Keefer, 741 A.2d 808, 812 (Pa. Super. 1999), as an "Official Note."  This note has been treated as authoritative by Pennsylvania courts.  See id.; Beltran v. Piersody, 748 A.2d 715, 717 (Pa. Super. 2000); Continental Bank v. Andrew Building Co., 436 Pa. Super. 559, 567 (1994).  This Note states, in part:

> The following is a partial list of orders previously interpreted by the courts as appealable as final orders under Rule 341 that are no longer appealable as of right unless the trial court . . . enters a final order pursuant to Rule 341(c):
> ***
> (3) an order dismissing a counterclaim but leaving pending the complaint which initiated the action[.]

Therefore where, as here, there remains pending Wells Fargo's foreclosure action, and where no judgment against the plaintiff has yet been entered and no amount owed has been fixed, and the dismissal of the plaintiff's counterclaims was unaccompanied by a certification by the trial court for immediate appeal under Rule 341(c), there has been no final order entered in the state court foreclosure action.

As noted above, in general "[n]onappealable interlocutory orders are not final and, therefore, have no res judicata or collateral estoppel effect."  DAP Financial Management Co. v. Ciotti, 2000 WL 33711071, at *2 (Pa. Com. Pl. 2000).  In In re Brown, 951 F.2d 564 (3d Cir. 1991), however, the Third Circuit Court of Appeals concluded that the entry of a summary judgment on liability only was sufficiently final under New Jersey law to be accorded preclusive effect.  In so doing, the Third Circuit noted that New Jersey courts followed the Restatement (Second) of Judgments § 13 (1982).  Id., 951 F.2d at 569.

22

The Pennsylvania Supreme Court has cited favorably to Restatement

(Second) of Judgments § 13 in <u>Shaffer v. Smith</u>, 543 Pa. 526, 530-31 (1996).  Based upon

<u>Shaffer</u>, the Third Circuit Court of Appeals applied Restatement (Second) of Judgments §

13 (1982) when deciding a question of collateral estoppel under Pennsylvania law in

<u>Greenleaf v. Garlock, Inc.</u>, 174 F.3d 352, 358 (3d Cir. 1999).  Section 13 states:

> The rules of res judicata are applicable only when a final
> judgment is rendered. However, for purposes of issue
> preclusion (as distinguished from merger and bar), "final
> judgment" includes any prior adjudication of an issue in
> another action that is determined to be sufficiently firm to be
> accorded conclusive effect.

The comment to section 13 contains the following explanation of the

provision as it relates to the question of res judicata in the instant adversary proceeding:

> It has often been suggested that finality for appellate review is
> the same as finality for purposes of res judicata, but that has
> probably never been quite true, and it is surely not true at
> present when considerable liberties are being taken with
> finality in the context of appeal in order to take care of
> various exigent situations in which prompt review by the
> higher courts is thought necessary. The fact that a trial court
> order may be reviewable by interlocutory appeal, for example
> under 28 U.S.C. § 1292(b), does not necessarily mean that the
> matter resolved in the order should be treated as final for
> purposes of res judicata. A general working description of
> finality in the field of former adjudication will, however,
> resemble the older, traditional, strict formulation of the
> concept of finality for appellate review. Thus when res
> judicata is in question a judgment will ordinarily be
> considered final in respect to a claim (or a separable part of a
> claim, see Comment e below) if it is not tentative, provisional,
> or contingent and represents the completion of all steps in the
> adjudication of the claim by the court, short of any steps by
> way of execution or enforcement that may be consequent
> upon the particular kind of adjudication. Finality will be
> lacking if an issue of law or fact essential to the adjudication
> of the claim has been reserved for future determination, or if
> the court has decided that the plaintiff should have relief
> against the defendant of the claim but the amount of the

> damages, or the form or scope of other relief, remains to be determined.

Id. cmt (b).

> A judgment may be final in a res judicata sense as to a part of an action although the litigation continues as to the rest. Thus in a bankruptcy or receivership proceeding the claim of a particular creditor may be finally adjudicated although the proceeding is not closed. So also in an action in which the plaintiff has joined a number of claims against the defendant, the rules of practice--for example, Rule 54(b) of the Federal Rules of Civil Procedure--may permit entry of judgment on particular claims as they are adjudicated, with the action continuing as to the remaining claims.  A judgment may be final as to part of a claim. Thus in an action upon a running account which is ordinarily taken to comprise but a single claim (see § 24, Comment d), the parties may agree or the court may direct that particular items be separately litigated and there may then be final judgments with respect to those items.

Id., cmt. (e).

Comment (g) offers three examples of circumstances where collateral estoppel should apply, because certain aspects of the litigation are final, even though no final order has been entered in the context of an appeal:

> 1. A, owner, brings an action against B, builder, for fraudulently inducing A to enter a construction contract. A moves in that action to stay arbitration of B's claim against A for payments due under the contract, contending that the arbitration clause is ineffective because it was induced by fraud. After a thorough hearing, the court grants A a preliminary injunction against arbitration. B appeals under a statute permitting review of such an interlocutory order. The appellate court reverses on the facts, finding that A failed to show that there was even a substantial issue as to fraud. If the court in a separate action by B against A to compel arbitration determines that the negative finding as to fraud in the first action was adequately deliberated and firm, that finding should be accepted as conclusive even though the first action has not reached final judgment in the strict sense.

24

2. In the course of an interpleader action to determine the
security interests of a number of claimants in property of a
debtor, claimant A applies for a determination as to the
validity of notes made by claimant B and endorsed to A,
evidently secured by part of the interpleaded property. The
interpleader court makes various findings upholding the
validity of the notes, but an appeal is dismissed on the ground
that a determination of liability without more is not an
appealable final decision. If the court in a separate action by
A against B to recover the amount of the notes determines
that the findings as to the validity of the notes were
adequately deliberated and firm, it should hold those findings
conclusive in the separate action. The court as a discretionary
matter may hold the issues as to the validity of the notes to be
conclusively settled.

3. In a jurisdiction that permits "split" trials (a trial of liability
followed, if liability is found, by a separate trial to ascertain
the damages), the jury in a negligence case finds for the
plaintiff A as to liability, the defendant B having denied his
own negligence and pleaded contributory negligence on the
part of A. Under the law of the jurisdiction, B cannot appeal
at this point as there is no judgment that qualifies as final for
that purpose; an appealable judgment would be reached later,
when, in the second phase of trial, another jury assessed the
damages. But prior to the second phase, the jury's verdict as to
liability may be held conclusive as to the issues of A's and B's
negligence in any other action between them in which the
same issues appear.

As Pennsylvania has decided to follow Restatement (Second) of Judgments,

§ 13 on the issue of "finality" for purposes of res judicata and collateral estoppel, I

conclude that Pennsylvania courts would give preclusive effect to the state court order

that dismissed the plaintiff's counterclaims against Wells Fargo.  While that order did not

finally resolve the foreclosure action brought against the Hugheses, it completely

determined the merits of the counterclaims, with no further action intended by the court

on those claims.  Thus, consistent with the holding of In re Brown, I agree with Wells

Fargo that the Full Faith and Credit provisions bar the plaintiff from relitigating those

25

claims in this forum.  See also In re Docteroff, 133 F.3d 210, 216 (3d Cir. 1997) (stating

that where the automatic stay prevented a state court from finishing partially resolved

litigation, the debtor should not be permitted to relitigate in federal court those issues that

had already been determined in state court).

C.

The final preclusion issue involves the district court judgment against the

plaintiff and in favor of Delta and Countrywide.

The TILA and UTPCPL issues in that litigation, stemming from the August

2000 loan agreement, were identical to those raised in the present proceeding.  The

plaintiff was unable to prove any entitlement to relief against those defendants in district

court.  Wells Fargo is an assignee who now holds the mortgage arising from that loan.

Even if Wells Fargo, as assignee, could be liable for federal loan disclosure violations or

state consumer protection violations allegedly committed by its assignor, see generally 15

U.S.C. § 1641; In re Barber, 266 B.R. 309, 320 (Bankr. E.D. Pa. 2001), this defendant

now contends that it is in privity with those two district court defendants, and that the

claims against it are now barred by collateral estoppel.

"Non-mutual defensive collateral estoppel works to prevent a plaintiff from

relitigating an issue the plaintiff has previously litigated unsuccessfully in another action

against a different defendant."  Bendet v. Sandoz Pharmaceuticals Corp., 308 F.3d 907,

910 (8th Cir. 2002).  See, e.g., Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 326 n.4

(1979); Estate of Portnoy v. Cessna Aircraft Co., 612 F. Supp. 1147, 1150 (S.D. Miss.

26

1985).  "By binding the plaintiff to earlier judicial decisions in which he was a party,

defensive collateral estoppel precludes a plaintiff from getting a second bite at the apple

merely by choosing a new adversary."  Jasper v. Sony Music Entertainment, Inc., 378 F.

Supp. 2d 334, 343 (S.D.N.Y. 2005).

   "An essential requirement of non-mutual defensive collateral estoppel is

that the plaintiff was a party to, or in privity with a party to, the prior adjudication."

Bendet v. Sandoz Pharmaceuticals Corp., 308 F.3d at 911.  Therefore, to the extent that

Wells Fargo was in privity with Delta or Countrywide, and as I have already concluded

that collateral estoppel would bar the plaintiff from relitigating his claims against those

two defendants, Wells Fargo would be entitled to similar relief.  See generally Schroyer v.

Frankel, 197 F.3d 1170 (6th Cir. 1999) (creditor's attorney entitled to defensive use of

collateral estoppel based upon a prior adjudication involving the creditor).

   In this proceeding, I conclude that Wells Fargo was in privity with Delta

and Countrywide, given the nature of the claims and its connection to this litigation

purely as assignee.  See Kittel v. First Union Mortgage Corp., 2001 WL 34047942, at *2

(W.D. Okla. 2001) ("First Union Mortgage Corporation as the servicing agent of the

original obligee and mortgagee, is in privity with it and its assignee, First Union National

Bank."); In re Desrosiers, 212 B.R. 716, 725 n.8 (Bankr. D. Mass. 1997) ("There is also a

third type of privity, where the nonparty is a successor in interest to a party in the

previous cause of action."). Therefore, the district court judgment can be used defensively

by Wells Fargo to preclude the plaintiff's attempt to relitigate those claims against it in

this forum.  See In re Desrosiers, 212 B.R. at 726-28 (debtors are precluded from raising

27

TILA claims in bankruptcy court after those same claims were dismissed against the

mortgagee's assignee in a district court action brought by one debtor).


IV.


In sum, as the plaintiff had a full and fair opportunity to litigate his TILA

and UTPCPL claims in district court, he is not entitled to another opportunity to relitigate

those same claims in this forum.  See generally Blonder-Tongue Laboratories, Inc. v.

University of Illinois Foundation, 402 U.S. 313 (1971).  Nor is he entitled to have me

review a prepetition order issued by the state court dismissing the identical claims he now

seeks to assert in the context of an adversary proceeding.  Principles of issue and claim

preclusion, as well as the Rooker-Feldman doctrine, require that judgment be entered in

favor of the defendants.

Accordingly, an order shall be entered granting defendants' motion for

summary judgment.

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re                                    :    Chapter 13

RONALD HUGHES, JR.                       :

        Debtor                  :    Bankruptcy No. 05-15209F
_____

RONALD HUGHES, JR.                       :

        Plaintiff               :

   v.                                    :

WELLS FARGO BANK MINNESOTA,              :
N.A., COUNTRYWIDE HOME LOANS,
INC. and DELTA FUNDING CORP.
        Defendant               :    Adversary No. 05-0395
_____

..................................................

ORDER

..................................................

AND NOW, this 23rd day of November 2005, for the reasons stated in the
accompanying memorandum, it is hereby ordered that the defendants' Motion for
Summary Judgment is granted.  The plaintiff's claims are dismissed against defendant
Wells Fargo for lack of subject matter jurisdiction and against defendants Wells Fargo,
Countrywide Home Loans, Inc. and Delta Funding Corp. due to issue and claim
preclusion.

_____
BRUCE FOX
United States Bankruptcy Judge

Copies to:

Mr. Ronald Hughes, Jr.
7149 Radbourne Road
Upper Darby, PA 19082

David A. Scholl, Esq.
Regional Bankruptcy Center of SE PA
Law Office of David A. Scholl
6 St Albans Avenue
Newtown Square, PA 19073

Jeffrey Meyers, Esq.
Ballard Spahr Andrews & Ingersoll, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599